UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES STILE, et al., | ) |
| | ) |
|     Plaintiffs | ) |
| | ) |
| v. | ) 2:12-cv-00260-JAW |
| | ) |
| CUMBERLAND COUNTY JAIL, et al., | ) |
| | ) |
|     Defendants | ) |

### RECOMMENDED DECISION ON MOTION TO DISMISS
### (ECF No. 25)

James Stile and Duane Toothaker, self-styled "Cumberland County Inmate Representatives" (Supplemental and Amended Complaint, ECF No. 11-1, Page ID # 67[1]), have filed a thirty-six page complaint which contains twenty-nine separate causes of action, numbered non-sequentially from one to forty.[2] The "causes of action" are a litany of complaints about the policies and practices of the Cumberland County Jail ranging from commissary practices to magazine subscriptions. Stile and Toothaker were both federal pretrial detainees when the pleading was filed on September 20, 2012.[3] The defendants have moved to dismiss the complaint. I recommend that the court grant their motion.

---

[1] Because of the cumbersome nature of the pleadings I have used the page identification numbering system of ECF in some instances to identify precisely where the particular allegation is found within the complaint. The complaint itself was docketed in two separate bundles. The first half of the complaint is numbered one through nineteen pages and the second half is numbered one through seventeen pages. If one were just to rely on conventional numbering there are two pages one through seventeen within the complaint.

[2] For some unexplained reason causes of action numbered 9, 11, 13, 19, 20, 27, 30, 31, 32, 35, 36, and 41 are missing from the sequence. Stile made an early abortive attempt to supplement his amended complaint with causes of action numbered 9 and 31, but the court received those documents prior to its receipt of the amended complaint and they were incomprehensible at that juncture. (See ECF No. 10, Order Striking Pleadings and Certain Defendants.) Once the court received a cognizable amended complaint, it became the operative pleading. Stile and Toothaker have never moved to amend that second complaint, but for purposes of my discussion of the motion to dismiss I have nevertheless inserted causes of action numbered 9 and 31 into the discussion.

[3] A review of this court's docket indicates that Toothaker was sentenced on January 14, 2013, to a fifty-seven month term of imprisonment. United States v. Toothaker, 2:12-cr-00148-GZS. It appears he may have been

**THE OPERATIVE PLEADING**

The docket entries reveal that Stile and two other inmates, McKenney and Hindle, commenced this action on August 30, 2012, by filing the original complaint. Following some initial procedural issues regarding the status of the other two plaintiffs, an amended complaint was filed on September 20, 2012, (ECF No. 11) by Stile and Toothaker, while the other two plaintiffs were terminated as parties. That amended complaint remains the operative pleading.[4] It does not appear that Toothaker has signed any of the pleadings since September 20, 2012, and Stile appears to be the lead plaintiff in this action. I will commonly refer to the pleading as "Stile's complaint."

As best I am able to understand the complaint allegations, Duane Toothaker does not allege that he personally has been impacted by any of the policies or procedures described in the complaint. James Stile appears to have a personal stake in at least three of the claims. Cause of action number 5 (Page ID # 40), explains that the individual who provides notary services to the inmates refuses to notarize any documents that have Cumberland County on the motion page because she is an employee of Cumberland County and it would be a conflict of interest to do so. She also refuses to notarize documents for the Somerset County Superior Court because Somerset County is part of the State of Maine and it would represent a conflict for her. She also refuses to notarize documents for the United States District Court because she is an American

---

transferred to the Strafford County House of Corrections in anticipation of placement in a federal facility. (See ECF No. 33, February 8, 2013, mail notification.) Toothaker has not communicated with the court himself. Stile is currently on the April 2, 2013, jury trial list in Bangor. United States v. Stile, 1:11-cr-00185-JAW. Stile notified the court two months ago that he was no longer at the Cumberland County Jail. According to the United States Marshal Service, as of March 14, 2013, he is still housed at the Strafford County House of Corrections in Dover, New Hampshire, awaiting trial. (See ECF No. 28, January 18, 2013, mail notification regarding Stile's current place of incarceration.)

[4]     The first two pages of the pleading consist of an explanation regarding the "class action" status of the complaint and a request that an attorney be appointed as counsel for the class of inmates "previously housed, currently housed and heretofore to be housed at the Cumberland County Jail." (Page ID# 33.) The pending motion does not address class action issues and I have not done so either.

citizen. Stile appears to be recounting these events from firsthand knowledge involving his own interactions with the jail notary, although the complaint does not specifically say so. The claim does not provide any specific example of legal documents Stile or Toothaker were unable to file or had rejected by a court or other entity because of the failure to provide notary services. However, the examples, Cumberland County, Somerset County Superior Court, and United States District Court, do parallel Stile's very own legal actions.

      In cause of action number 25 (Page ID# 57) Stile alleges that the policy of the jail of placing a red stamp on outgoing envelopes stating that the correspondence is being sent from the Cumberland County Jail has caused him personal embarrassment and violated his constitutional rights. Stile explains that he personally communicates with the American Kennel Club and veterinarians[5] and that as a pretrial detainee it violates his personal privacy to be forced to reveal his custodial status to these individuals/organizations with whom he has a professional relationship. Finally, in cause of action number 38 (Page ID# 64), complaining of the lack of soundproofing in the attorney visitation area, one of the plaintiffs notes that "I" have been distracted by loud music. According to the plaintiffs the loud music is played to insulate the voices of attorneys and prisoners from carrying from one room to another. Again, it seems fair to assume that "I" refers to Stile.

      The twenty-six other claims in the amended complaint involve allegations that conceivably could pertain to personal experiences of Stile or Toothaker, but there is nothing in the pleading that identifies either of their individual experiences in connection with the claimed violation. There is no allegation that either of the named plaintiffs purchased commissary items at grossly inflated prices (Count 1), was unable to call their attorneys or others because of the

---

[5] This allegation is actually written in the first person and could theoretically pertain to either Toothaker or Stile, but Stile's association with dog breeding was a theme of the motion to suppress in his criminal case so it is fair to assume the "I" in this claim refers to Stile.

inadequate telephone system (Count 2), had problems with filing grievances (Count 3), have been injured because of insufficient legal materials (Count 4), does not understand English and have been denied interpreters (Count 6), has been injured by being housed with state inmates (Count 7), was unable to purchase headphones (Count 8), was denied kosher or halal meals in violation of his religious practices (Count 10), has been injured because another inmate looked at his discovery materials (Count 12), was denied medications (Count 14), was forced to defecate in front of a cellmate (Count 15), was injured because of the corrections officers' name tags (Count 16), was subjected to disciplinary segregation in A-pod (Count 17), contracted a disease from the telephones (Count 18), had envelopes returned that exceeded the size permitted (Count 21), was injured by the inability to view discovery materials that are on CD or DVD (Count 22), was injured by the failure of the jail to keep video tape footage longer than 30 days (Count 23), contracted a communicable disease at the jail (Count 24), was beaten in the tank (Count 26), had his legal visits limited (Count 28), was injured by an inability to use Westlaw (Count 29) or a computer in the pod (Count 33), was denied the ability to obtain copies of legal documents (Count 34), had a taser used against him (Count 37), had difficulty attending the library (Count 39), or attempted to harm himself by jumping from the upper tiers (Count 40).

## MOTION TO DISMISS STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought."

Fed. R. Civ. P. 8(a).  When deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "'plausible on its face.'"  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted)).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).  A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement.  Fed. R. Civ. P. 8(a).  However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy.  Iqbal, 556 U.S. at 678.  Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice.  Iqbal, 556 U.S. at 678.  See also Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011.)

## DISCUSSION

I begin with a general observation about Stile's complaint.  It is well organized and readable, avoiding the common prisoner mistake of simply stating legal conclusions while failing to provide factual content.  For the most part Stile does not plead conclusory statements, he describes the factual basis of the harm he is pleading.  Nevertheless, Stile's complaint ultimately fails because the law provides no remedy to him for the harm he has alleged, either because the grievance is not of constitutional magnitude or because the serious harm he alleges is not shown to have anything to do with an injury he has suffered.  I have attempted to group the various harms Stile alleges into six broad categories:  (1) potentially serious harm relating to conditions

of confinement; (2) harm relating to denial of or interference with access to the courts; (3) harm relating to handling of prisoner mail; (4) First Amendment harm relating to religious preferences; (5) harm relating to grievance policy and procedures; and (6) generalized harm relating to unsatisfactory or unpleasant conditions of confinement that simply do not rise to the level of constitutional violations. For each category of allegations I will discuss the generally applicable legal principles and explain why Stile's complaint does not state a legally cognizable claim.

Title 42 U.S.C. § 1983 provides a right to bring a civil action against a person who, under color of law, deprives another person of a constitutional right. "The essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself . . . ." Drumgold v. Callahan, 707 F.3d 28, 54 (1st Cir. Jan. 31, 2013) (quoting Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995)). Both the Eighth Amendment and the Fourteenth Amendments proscribe the infliction of cruel and unusual punishment and conditions that deny "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 339, 347, 354 (1981). Prison conditions are subject to constitutional scrutiny, and inhumane conditions are not permitted. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Rhodes, 452 U.S. at 359; Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011).

In the health and safety context, inmate-on-inmate violence is one of several deprivations that may create an intolerable prison condition. Farmer, 511 U.S. at 833-34. "Prison officials must take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002). Inadequate medical care is another. Id. at 828, 834; Leavitt, 645 F.3d at 497. As for prison conditions generally, the Constitution "imposes duties on [prison] officials [to] provide humane conditions of

confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

**1.      Allegations of Potentially Serious Harm (causes 7, 14, 17, 18, 24, 37, and 40)**

In this category I have grouped cause of action 7, relating to housing pretrial detainees in potentially dangerous situations, cause of action 14, providing medication for the mentally ill, cause of action 17, segregation in maximum security for extended periods of time, cause of action 18, failure to provide telephone sanitizing wipes or otherwise taking precautions to prevent the spread of infectious diseases, cause of action 24, the protocol for communicable diseases, cause of action 37, taser training, and cause of action 40, suicide prevention measures in housing.

In his cause of action 7 Stile relates that federal pretrial detainees at Cumberland County Jail have had their cells infiltrated by informants who read discovery information and then market themselves as paid informants with the new found knowledge, have been subject to serious assaults by state prisoners, and have contracted communicable diseases from state prisoners. Stile provides the names of the federal pretrial detainees who have been subject to such conduct. Neither Stile nor Toothaker is among the victims. Nevertheless, I am willing to accept that the alleged facts could create a risk of serious harm and might be actionable in the right circumstances. However, Stile cannot use this lawsuit to right the wrongs, real or imagined, experienced by other prisoners when he himself has not had his discovery information compromised, been seriously assaulted by a state prisoner, or contracted a communicable disease at the CCJ.

Defendants characterize this issue as one of standing. (Motion to Dismiss at 2.) I believe they are correct. Stile and Toothaker simply do not have standing to pursue these claims on behalf of others when they themselves have not suffered the alleged injury. "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that []he asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). Even if one conceives of Stile's action as a "class action" he cannot get over the standing hurdle. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" ) (quoting Warth v. Seldin, 422 U.S. 490 (1975)).

Title 18 U.S.C. § 3142 (i)(2) requires that every detention order direct the Attorney General to house a federal pretrial detainee separately, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. As pretrial detainees, the plaintiffs could argue that they do have standing to obtain prospective injunctive relief, because they have alleged a particularized injury. See Farmer, 511 U.S. at 845 (noting that the standard of subjective deliberate indifference does not require an inmate "to await the consummation of threatened injury to obtain preventive relief") (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)). However, since both Stile and Toothaker are no longer housed at the Cumberland County Jail and are not likely to be returned to that facility, the question of

8

prospective injunctive relief is moot. Shaheed-Muhammad v. Dipaolo, 138 F. Supp. 2d 99, 101 (D. Mass. 2001).

This same rationale defeats Stile's claims regarding medication being denied to the mentally ill (cause of action 14), inhumane conditions in disciplinary segregation (cause of action 17), failure to take preventative measures regarding the spread of infectious diseases such as mercer infections[6] or tuberculosis (causes of action 18 & 24), improper training in the use of tasers (cause of action 37), and jail construction that does not adequately guard against suicide attempts (cause of action 40). All of these claims are serious and Stile provides some details of inmates who have been injured allegedly because of a policy of deliberate indifference to these conditions that create a pervasive risk of serious harm. However, neither Stile nor Toothaker is the proper defendant to pursue these claims.

**2.    Allegations related to court access (causes 4, 5, 6, 12, 22, 23, 28, 29, 33, 34, 38 and 39)**

Stile's complaint contains numerous allegations about lack of access to legal materials and other perceived deficiencies that prevent a prisoner's reasonable access to the courts and/or interfere with the ability to pursue litigation. Among these complaints Stile cites the lack of law books (cause of action 4), notary services (cause of action 5), bilingual signage and services (cause of action 6), failure to provide lockboxes for discovery materials (cause of action 12)[7], lack of access to electronic discovery media (cause of action 22), the video tape retention policy

---

[6]    Mercer infection is a colloquial term for Methicillin-resistant Staphylococcus aureus infection, apparently a potentially serious health issue.

[7]    State correctional authorities are required by Maine statute to provide inmates with a "reasonably secure area" for their permitted personal belongings, which would include discovery materials. See 34-A M.R.S. § 3031(7). I am unaware of an analogous statutory provision involving county jails. The only potential constitutional violations implicated by this failure on the part of Cumberland County is a deliberate indifference claim which would arise if a prisoner was subjected to physical harm because of another inmate pilfering discovery materials and learning something about the fellow prisoner or a due process claim arising because the prisoner's inability to keep his discovery secure somehow interfered with his ability to mount a defense in his criminal trial, thereby infringing on the prisoner's Sixth Amendment right to communicate with his counsel. In any event Stile has not pled any personal injury as a result of this policy.

(cause of action 23),  limitations on lawyer visits (cause of action 28), lack of networked personal computers for legal research (cause of action 29), lack of typewriters or computers in the individual pods (cause of action 33), restrictions on copies of legal materials (cause of action 34), soundproofing in the lawyer visitation rooms (cause of action 38), and insufficient library services (cause of action 39).  Even when Stile recounts that he has personally been affected by one of these conditions, as in the soundproofing allegation, he never alleges that he has suffered any personal consequence to his own ongoing litigation, has been unable to meet filing deadlines, has otherwise been unable to get his pleadings accepted by any court, or has had his right to communicate with his defense counsel compromised.

In Bounds v. Smith, the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  In Lewis v. Casey, the Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

518 U.S. 343, 351 (1996) (quoting Bounds, 430 U.S. at 823).  See also Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000).  This right of access to courts "does not guarantee inmates the

wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Casey, 518 U.S. at 355.

Stile has made out a case that the facilities at Cumberland County Jail are subpar and that additional steps could be taken to give inmates better access to legal materials and their attorneys when they are represented by counsel. However, he has not sufficiently alleged that he suffered any cognizable constitutional violations as a result of these policies.

### 3. Allegations relating to prisoner mail (causes 9, 21, and 25)

If the stricken[8] cause of action 9 is included with causes of action 21 and 25, Stile has three separate causes of action arising from prisoner mail issues. Stile complains that Cumberland County unnecessarily opens incoming prisoner mail other than in the prisoner's presence, unnecessarily restricts outgoing mail to courts, does not forward prisoner mail, refuses to make express mail service available even when prisoners are willing to pay, unnecessarily restricts the size and color of envelopes, and creates unnecessary embarrassment for pretrial detainees like himself by stamping outgoing mail with a red stamp indicating the mail originated from the Cumberland County Jail.

A correctional facility's restriction of mail implicates First Amendment concerns involving freedom of speech. See Beard v. Banks, 548 U.S. 521 (2006); Stow v. Grimaldi, 993 F.2d 1002 (1st Cir. 1993). Stile may proceed with this mail-related First Amendment claim if he can demonstrate that the complained-of policies are not "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Prisoners challenging prison mail regulations often find their complaints falling on less than sympathetic ears. See United States v. Whalen,

---

[8]   See footnote 2.

940 F.2d 1027, 1035 (7th Cir. 1991) ("[I]t is well established that prisons have sound reasons for reading the outgoing mail of their inmates."); United States v. Kelton, 791 F.2d 101 (8th Cir. 1986) (prisoner's Fourth Amendment rights not violated by prison official's inspection and copying of prisoner's outgoing mail); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986) (inspection of non-privileged outgoing mail does not violate prisoners' First Amendment rights).

In Theriault v. Magnusson, 698 F. Supp. 369, 370 (D. Me. 1988), this court refused to enjoin the prison from requiring outgoing mail be sent in envelopes that stated: "This correspondence is forwarded from the Maine State Prison. The contents have not been evaluated and the Maine State Prison is not responsible for the substance or content of the enclosed communication." See also Nachtigall v. Bd. of Charities & Corr., 590 F. Supp. 1223 (D.S.D. 1984) (stamping an inmate's outgoing mail as being sent from a penitentiary did not violate inmate's first or fourteenth amendment rights or privacy rights).

Even if Stile's various complaints do somehow state a claim for a First Amendment violation under the Turner v. Safley standard, the remedy against Cumberland County would necessarily be limited to injunctive relief because Stile has not alleged any specific monetary harm. As previously discussed, Stile is no longer at Cumberland County Jail and the issue of injunctive relief is now moot as to him and Toothaker.

**4.     Allegations relating to religious matters (cause 10)**

In cause of action 10, Stile complains that Jewish and Muslim prisoners do not have their "religious food practices" honored by the Cumberland County Jail. Jewish kosher and Muslim halal practices are not honored. Stile does not allege that either he or Toothaker is Jewish or Muslim. Whether Stile's allegations of constraints on the religious practices of others are governed by the First Amendment or by the Religious Land Use and Institutionalized Persons

Act (RLUIPA), 42 U.S.C. §§ 2000cc-1 *et seq.*, he does not have standing to pursue relief for injuries to others' beliefs or practices.

5.      **Allegations pertaining to the jail's grievance policy (causes 3 and 31)**

Stile objects to the design of the jail's grievance system, equating it to an insurance company's procedure for denying claims (cause of action 3) and the fact that correctional officers can make written accusations and not make themselves available for cross-examination (stricken cause of action 31).  Once more he fails to allege that he has specifically fallen afoul of the grievance policy or suffered any particularized injury.  Nevertheless, even if Stile had alleged a personal involvement with the grievance system, "a prison grievance procedure does not provide an inmate with a constitutionally protected interest." Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011).  See also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001).  If a jail chooses to use an insurance claims-handling model for its grievance policy, as alleged by Stile, it does not necessarily mean that a prisoner's constitutional rights have been violated.  Because the plaintiffs' allegations concerning inadequate grievance procedures are not separately actionable under section 1983, these claims should be dismissed.

6.      **Allegations about general constraints of prison life (causes 1, 2, 8, 15, 16, and 26)**

I have lumped six of Stile's claims in this broad category.  He complains about commissary prices (cause of action 1), access to telephones (cause of action 2), availability of headphones for watching television (cause of action 8), lack of personal privacy in shared cells (cause of action 15), the failure of the jail to properly display the guards' names on their uniforms (cause of action 16), and the failure of the jail to place video cameras in certain cells to record guards' activities (cause of action 26).   I do not consider any of these claims to state a constitutional violation.

Stile does not cite a provision of the United States Constitution as the basis for his claims about commissary prices and, indeed, his complaint simply does not state a claim of constitutional magnitude.  See French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible.  Although the wide support for French's proposal is understandable, there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost.");  Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002) ("[T]here is no constitutional right to purchase food from the canteen.");  Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop.");  Bennett v. Sheahan, No. 99-C-2270, 1999 WL 967534, at *4, 1999 U.S. Dist. Lexis 16339, at *10 (N.D. Ill. Oct. 5, 1999) ("Commissary prices implicate no constitutional right.  Because the county provided for the plaintiff's basic necessities (food, shelter, clothing, medical care, etc.), he had no protected property or liberty interest in commissary privileges.");  Mitchell v. Liberty, No. 1:08-cv-00341-JAW (D. Me. Dec. 11, 2008); Rodriguez v. Swanson Servs. Corp., No. 2:01-cv-117-GC (D. Me. May 11, 2001) (collecting district court cases).

Stile complains about the system Cumberland County has devised for placing collect calls from the jail.  He notes that some jails allow prisoners to dial direct and deduct the costs from the prisoner's account.  He suggests that such a system is better than the collect calling system employed by Cumberland County and would enable prisoners to have better access to their attorneys.  He also notes that for the entrepreneurial inmate, this collect calling system can impede interstate commerce.  It does not seem to cross Stile's mind that losing one's ability to freely conduct an ongoing business just might be one of the prices one pays when incarcerated.

As a prisoner Stile does not have an unfettered right to use a prison phone on his own terms. A prisoner's right to telephone access is subject to rational limitations in the face of the prison's legitimate security interests. Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994). The First Circuit has recognized that an institution may require the inmate to consent to monitoring as a condition of telephone usage in the prison, Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997), and has further determined that monitoring phone calls between a prisoner and his lawyer does not amount to a fourth amendment violation if one party consents to the monitoring, United States v. Novak, 531 F.3d 99, 101 (1st Cir. 2008). Surcharges may also be imposed. For example, as a general principle the fact that a prison telephone system blocks or monitors certain calls and imposes a $5.00 per month surcharge on a prisoner has been held not to state a claim for a constitutional violation. Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000) (holding that imposition of increased rates for phone usage by prisoners does not violate the First Amendment), rev'd on other grounds, 543 U.S. 499 (2005).

While the other four causes of action in this category may raise legitimate issues about management issues at the Cumberland County Jail, they simply do not, in and of themselves, rise to the level of a constitutional violation. The jail's constitutional obligation is to insure that prisoners are provided with the basic necessities of life, which does not mandate headphones for watching television. Nor does the jail have the obligation to provide better name tags or cameras in certain cells to assist prisoners when they want to make complaints about the conduct of certain jailers. Of course, good management by the corrections personnel might lead to these reforms, but the failure to take these steps does not amount to a constitutional violation. If an individual officer is accused of excessive force against an inmate, for example, the fact that the jail did not have these types of measures in place might be evidence that a factfinder could

consider in assessing liability, but they do not rise to a separate claim of constitutional magnitude. Stile's allegations do not amount to cruel and unusual punishments within the standard set forth in these cases.

## CONCLUSION

Based upon the foregoing, I recommend that the Court grant the motion to dismiss.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 26, 2013                    /s/ Margaret J. Kravchuk
                                  U.S. Magistrate Judge